ERNESTO PÉREZ, Plaintiff and Appellant, *v.* LUIS M. SAMPEDRO, Defendant and Appellee.

No. 157. Decided November 15, 1962.

*Ernesto Juan Fonfrías, Benjamín Ortiz,* and *Fausto Ramos Quirós* for appellant. *F. Fernández Cuyar* for appellee.

Division composed of Mr. Justice Pérez Pimentel, as Chief Judge of Division, Mr. Justice Rigau, and Mr. Justice Dávila.

MR. JUSTICE PÉREZ PIMENTEL delivered the opinion of the Court.

By public deed executed in 1946, Ramón Fournier, in his own right and as proxy for his wife Luz María Sampedro, leased to Ernesto Pérez, with option of purchase, a certain parcel of land situated in the ward of Cangrejos of the Municipal District of Carolina.

Pérez exercised in due time his right of option of purchase by requiring Fournier in writing, on July 31, 1947, to fulfill his obligation to sell to him the said parcel. The latter agreed to comply with his obligation and to that effect he invited Pérez to take steps, through his attorneys, with the Planning Board to obtain the segregation of several parcels, among others, the parcel to be ceded to Pérez. For the second time the latter exercised his right of option, and in August of that year Fournier reaffirmed in writing his interest in complying with his obligation to sell to Pérez. Fournier died in the meantime, but the steps for segregating the parcels continued before the Planning Board and Luz María Sampedro widow of Fournier and Puerto Rico Memorial, Inc. appeared as petitioners counting on the collaboration of Pérez' testimony.

Having obtained authorization to segregate several parcels, among which was that occupied by Pérez as lessee, Fournier's widow sold the said property to Puerto Rico Memorial, Inc., thereby violating her obligation towards Pérez.

In March 1955, Pérez sued the widow of Fournier to recover compensation for nonfulfilment of the obligation to sell to him the parcel in question.

After a trial on the merits the Superior Court held that the defendant was bound to sell to Pérez the said parcel for the price of $2.50 per meter, and that since that value was $8 per meter in 1955, the filing date of the complaint, it or-

dered the defendant to pay to the plaintiff one half (this being the proportion of her liability as widow of Fournier) between both prices, plus costs, and $1,000 for attorney's fees. However, on defendant's motion, it reconsidered the judgment and awarded only nominal damages to the plaintiff in view of the fact that the latter did not introduce evidence on the value of the lands at the time of defendant's failure to fulfill her obligation.

In this appeal the plaintiff alleges that the trial court erred (1) in deciding the case on the basis of a doctrine of measure of damages which is clearly inapplicable, in disregard of the applicable provisions of our local law; (2) in erroneously concluding that the nonfulfillment of the obligation to sell on the part of the defendant took place in 1947; and (3) in awarding only nominal damages and eliminating the pronouncement of costs and attorney's fees.

The appellant discusses these errors jointly with the exception of the one concerning attorney's fees which he does not argue. We turn to consider them in like manner.

■■ The juridical figure *option of purchase* has been labelled by the Spanish authorities as contract *sui generis* having its own substantivity and defined contours, although very similar to the contract of unilateral promise of accepted sale which is distinguished only by the requirement of the premium or the price which may be stipulated in the latter by the acquisition of the right to choose within a certain period between the execution or withdrawal of the proposed sale, and in any event, according to the Judgment of the Supreme Court of Spain of March 25, 1947, both the unilateral promise and the right of option are subject to the same obligatory juridical system whereby the parties in interest are bound to fulfill the obligation, either *in natura* or by the suppletory method of compensation for damages, in accordance with the general rules for contracting, particularly in accordance with the provisions of §§ 1091, 1255, and 1256

of the Civil Code (counterparts of § § 1044, 1207, and 1208 of the Civil Code of Puerto Rico, 1930 ed., 31 L.P.R.A. § § 2994, 3372, and 3373).

■ The Supreme Court of Spain has established in different judgments, among them those of March 23, 1945, July 10, 1940, and January 18, 1947, the difference between the option and the contract of promise to sell. In those judgments it lays down the doctrine that the contract of option is governed by the general rules on obligations and contracts, and in establishing its distinction from the contract of reciprocal promise of sale it is said that in the latter the parties do not sell and purchase, but that they bind themselves to sell and to purchase, namely, to give a subsequent consent, while in the contract of option the promiser has offered the sale which is perfected by the acceptance by the promisee upon exercising the action. The option having been accepted within the agreed period, the promiser is bound to the performance.

■ If the promisee is unable to demand the fulfillment *in natura* because the promiser has sold to a third party the real property object of the promise, as was the case here, he may demand the fulfillment by suppletory manner of compensation for damages. Section 1077 of our Civil Code; Judgment of January 7, 1947 of the Supreme Court of Spain, which held that § 1124 of the Spanish Civil Code (§ 1077 of our Code, 31 L.P.R.A. § 3052) was applicable to a contract of lease of urban property where it provides for an option of purchase in favor of the lessee, thereby reiterating the doctrine that the general rules on obligations and contracts apply to a contract of option. In order to apply § 1077 *supra* it is necessary that an obligation be constituted, that the obligor fail to fulfill the same, and that this nonfulfillment cause damages. Judgments of June 26, 1903 and June 5, 1944 of the Supreme Court of Spain. And according to the provisions of § 1059 of our Civil Code, the indemnity for dam-

.ages includes not only the amount of the loss which may have been suffered (consequential damage), but also that of the profit which the creditor may have failed to realize (lost profit), save for the exceptions which do not apply to the case at bar.

■ However, it is a well-established rule that in order that an action for damages caused by nonperformance of contract may prosper, it is not sufficient that the plaintiff establish the nonfulfillment of the obligation by the debtor, but it is also necessary that he establish the real and positive existence of the damages caused, "since otherwise the compensation would lose its natural character, acquiring that of a penal sanction, a concept which is entirely different from that contained in § 1101 (§ 1054 of Puerto Rico, 31 L.P.R.A. § 3018), in which case the nonfulfillment would not by itself imply said existence of damages so as to release the plaintiff from presenting evidence of such damages, since evidence of the two facts, namely, the nonfulfillment and the damage, is indispensable. (Judgment of June 15, 1927)." 8–1 MANRESA at 152 and 153. *Cf. Boria* v. *Maryland Casualty Co.*, 60 P.R.R. 808 (1942).

From the record we know that in the contract of option the price of the parcel to be sold was fixed at $2.50 per square meter; that after the plaintiff exercised in due time the right of option, Fournier postponed the performance of the contract until the approval by the Planning Board of the corresponding segregation of the parcel, which it did in 1952, and that in 1955 the market value of similar parcels was $8 per square meter.

■ The appellant contends that the trial court erred in determining that the nonperformance of the contract took place in 1947, when he exercised his right of option, and that since the Planning Board did not approve the segregation until 1952, that was at the least the date of nonfulfillment. He further maintains that, it being an option, the measure of

504

the damages is the value of the contract on the date it should have been executed and not the difference between the contract price and the value of the lands at the time of nonfulfillment or breach of contract.

█ Whatever the measure of the damages in a case such as this, the plaintiff failed to establish those damages. Assuming, as held in the judgment appealed from, that the measure of the damages is the difference between the contract price and the value of the lands on the date of nonfulfillment, and accepting, arguendo, appellant's proposition that such nonfulfillment took place in 1952 at the least, there is no basis in the record to determine, without indulging in the field of speculation, the value of the lands in that year. On the contrary, if the measure of the damages, as maintained by the appellant, is the value of the contract at the time it should have been executed, whether in 1947 or in 1952, there is no evidence either of such value. Therefore, the plaintiff-appellant failed to establish the loss sustained as well as the profit which he failed to realize. Under such circumstances and in view of the legal doctrine announced, his action can not prosper.

Consequently, the judgment rendered by the Superior Court on April 20, 1959 will be affirmed.